Sylvester **HENDERSON**, Plaintiff,

v.

Geneva **HARRIS**, et al., Defendants.

No. 85 C 10201.

United States District Court,
N.D. Illinois, E.D.

Aug. 31, 1987.

Bradley J. Hulbert, Dale A. Malone, Allegretti, Newitt, Witcoff & McAndrews, Chicago, Ill., for plaintiff.

Mary S. Rigdon, Asst. U.S. Atty., Robert Marc Chemers, Pretzel & Stouffer, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

This represents the consolidation of motions for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), brought by defendants O.C. Jenkins, J.F. Wayman and United States of America ("United States") against plaintiff's third amended complaint.[1] We have reviewed defendants'

---

1. Plaintiff has also brought suit against Frank E. Basil, Inc., a medical group contracted by the

Metropolitan Correctional Center ("MCC") in Chicago to provide medical care and services to

pleadings and additional material submitted by them and plaintiff. Accordingly, defendants' motions are treated as motions for summary judgment pursuant to Fed.R. Civ.P. 56.

Plaintiff's claim against defendant United States arising out of other defendants' alleged defamation of plaintiff is dismissed for lack of subject matter jurisdiction. Because there exist unresolved material issues of fact, defendants Jenkins' and Wayman's motions are denied and the United States' motion with respect to plaintiff's non-defamation claims is also denied.

The basis for subject matter jurisdiction for plaintiff's claims against defendants Jenkins and Wayman is 28 U.S.C. § 1331(a). The basis for subject matter jurisdiction for plaintiff's claims against the United States is 28 U.S.C. § 1346(b).

Venue is proper under 28 U.S.C. § 1391(b).

## I.

### *The Facts and Plaintiff's Claims*

Sylvester Henderson, plaintiff, at present is an inmate at Stateville Correctional Center in Joliet, Illinois. Plaintiff was held in custody, however, at the Metropolitan Correctional Center ("MCC"), a federal institution under the control of the United States Bureau of Prisons, in Chicago, Illinois, in August and September, 1985, so that he could testify in another federal trial. The facts concerning the plaintiff's medical condition and treatment provided while he was in custody at the MCC form the basis for his complaint against all the defendants.

Plaintiff alleges that he was intentionally and negligently deprived of medical care and treatment which was needed by and prescribed for him during his stay at the MCC in August and September 1985. Specifically, plaintiff claims that he contracted hemorrhoids while in custody at the MCC and that, among other things, he was re-

peatedly denied access to medical personnel and care, medical supplies were taken from him without his permission and contrary to medical instructions, he was operated on without his consent by a clinician who had no license to perform surgery nor any relevant surgical experience, and certain clinicians defamed him by publishing falsehoods concerning his illness.

Accordingly, plaintiff seeks the following relief: (1) damages against defendants Jenkins and Wayman for their alleged violation of his Eighth Amendment protection against cruel and unusual punishment; (2) damages against defendant William Marinis for his alleged violation of plaintiff's Fourteenth Amendment right of privacy and Eighth Amendment protection against cruel and unusual punishment; (3) damages against defendants Dr. Paul Knott, Geneva Harris, Sonya Stewart, Anna Thompson, Deborah Grant, S. Jackson and S. Rulong for their alleged violations of plaintiff's Eighth Amendment protection against cruel and unusual punishment; (4) damages under Illinois state tort law against defendants Harris, Grant, Stewart, Thompson, Marinis, Knott, Jackson, Rulong and Frank E. Basil, Inc., for their alleged negligent medical treatment of plaintiff; (5) damages under Illinois state tort law against defendants Knott and Harris for their alleged defamation of plaintiff; and (6) damages under 28 U.S.C. §§ 2671–80 (The Federal Tort Claims Act ("FTCA")) against the United States for its negligent supervision of plaintiff and its responsibility for the acts and ommissions of the other defendants who allegedly acted as employees of the United States.

## II.

### *Defendants' Motions*

Defendants Jenkins, Wayman and United States have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

---

MCC inmates; William Marinis, a physician's assistant employed by Basil, Inc. and assigned to provide medical care to MCC inmates; and Dr. Paul Knott, Geneva Harris, Sonya Stewart, Anna Thompson, Deborah Grant, S. Jackson and S. Rulong, employees of Basil Inc. assigned to provide medical care to MCC inmates. Plaintiff's complaint against the non-United States defendants is brought against them in both their individual capacity and alleged official capacity as agents or employees of defendant United States.

However, where "matters outside the pleadings are presented to and not excluded by the court, the motion [for judgment on the pleadings] shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Fed.R.Civ.P. 12(c). *See, Arden v. Village of Oak Lawn,* 537 F.Supp. 181, 184 n. 6 (N.D.Ill.1982); *McDonnell v. Estelle,* 666 F.2d 246, 250 (5th Cir.1982). Defendants submitted additional material which we reviewed. Accordingly, defendants' motions for judgment on the pleadings are considered as motions for summary judgment pursuant to Fed.R.Civ.P. 56.

In review of defendants' motion for summary judgment, defendants retain the burden of persuasion that the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [defendants are] entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See, Kaufman v. Board of Trustees, Community College,* 552 F.Supp. 1143, 1145 (N.D. Ill.1982); *Cameron v. Internal Revenue Service,* 593 F.Supp. 1540, 1545 (N.D.Ind. 1984), *aff'd,* 773 F.2d 126 (7th Cir.1985). Plaintiff, in opposition to defendants' motions, is afforded "all reasonable inferences that can be made in its favor from the evidence presented." *Kaufman, supra,* 552 F.Supp. at 1145. Because only defendants Jenkins, Wayman and the United States have moved for summary judgment, review of their motions will avoid analysis of plaintiff's complaint against the other (non-moving) defendants.

### III.

#### Plaintiff's Response

Plaintiff's response to all defendants' motions for summary judgment initially alleges that these motions should be dismissed on procedural grounds. Specifically, plaintiff charges that dismissal of defendants' motions is warranted due to the following: (1) failure of defendants to submit a statement of undisputed material facts with their brief, pursuant to N.D.Ill. R. 12(e); (2) failure of defendants to serve copies of their supporting memorandum, consisting of "evidentiary material," concurrently with their notice of motion, pursuant to N.D.Ill. R. 12(c); and (3) failure of defendants to serve their motions pursuant to the timing requirements of Fed.R.Civ.P. 56(c). Although the procedural defect with respect to N.D.Ill. R. 12(e) could warrant dismissal, we find that plaintiff was not prejudiced by defendant's failure to submit a statement of undisputed material facts and, accordingly, defendants' motions are reviewed on their merits.

As to defendants' alleged violation of N.D.Ill. R. 12(c), defendants properly obtained leave of court to file their supporting memorandum pursuant to N.D.Ill. R. 9(d). The timing requirements of Fed.R. Civ.P. 56(c) have not been implicated because no hearing date for defendants' motions was established. In addition, we find that defendants are not prejudiced by consideration of their motions as motions for summary judgment, rather than as motions for judgment on the pleadings. Indeed, as the moving parties and suppliers of additional material, defendants are responsible for their motions being considered as motions for summary judgment and were given a reasonable opportunity to present all material pertinent to their own motions.

### IV.

#### A.

#### Jenkins' Motion for Summary Judgment

Defendant Jenkins was the Warden at the MCC when plaintiff was admitted in August, 1985. With respect to defendant Jenkins, plaintiff's third amended complaint alleges the following: (1) between August 26, 1985 and September 15, 1985, plaintiff complained to prison officials of a hemorrhoid problem; (2) an examining doctor at the MCC prescribed medication, ointment and therapeutic sitz baths; (3) defendant Jenkins, or others acting under his supervision, intentionally denied plaintiff the sitz baths, causing plaintiff's condition to worsen; (4) a second doctor at the MCC examined plaintiff on September 14, 1985

and again prescribed the sitz baths; (5) this treatment was intentionally denied to plaintiff; (6) on September 20, 1985, defendant Jenkins, or other MCC personnel acting under his supervision, denied plaintiff access to his scheduled appointment with the second doctor seen previously; (7) plaintiff's condition worsened and on September 20, 1985 he was examined by physicians at Mercy Hospital (outside the MCC); (8) on September 23 or 24, 1985, defendant Jenkins, or others acting under his supervision, denied plaintiff access to a scheduled return visit to the hospital; and, (9) as a result of defendant Jenkins' acts and omissions, plaintiff suffered great physical and mental injury.

In his motion for summary judgment, defendant Jenkins claims that: (1) he had no duty to assist plaintiff to gain access to medical personnel at the MCC; (2) he had no duty to arrange for plaintiff's return visit to Mercy Hospital and additionally had no knowledge of the appointment itself; (3) he had no duty to allow plaintiff to maintain a portable sitz bath kit at the MCC; (4) he had no duty to assist plaintiff's medical needs due to the employment of medical personnel at the MCC who were independently responsible for plaintiff's care; (5) plaintiff received medical treatment on several occasions while in custody at the MCC; (6) plaintiff refused treatments on specific occasions; (7) continuous and adequate medical care was available at the MCC; and (8) plaintiff's dissatisfaction with medical care received is not the responsibility of defendant Jenkins. Finally, defendant Jenkins alleges that, if he was under a duty with respect to plaintiff's medical needs, he enjoys immunity from liability for any damage claims.

Violating plaintiff's Eighth Amendment protection against cruel and unusual punishment subjects defendant Jenkins to personal liability. *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Carlson v. Green,* 446 U.S. 14, 18–23, 100 S.Ct. 1468, 1471–1474, 64 L.Ed.2d 15 (1980). Defendant Jenkins' duty with respect to inmates held in custody at the MCC has been

clearly established. In *Estelle v. Gamble,* the Supreme Court held that:

> deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," *Gregg v. Georgia,* 428 U.S. 153, 173 [96 S.Ct. 2909, 2925, 49 L.Ed.2d 859] (1976), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed....
>
> [However,] a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

429 U.S. 97, 104–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977) (footnotes omitted); *Wellman v. Faulkner,* 715 F.2d 269, 274 (7th Cir.1983) ("[A]s a matter of constitutional law, a certain minimum level of medical service must be maintained to avoid the imposition of cruel and unusual punishment."). The deliberate indifference standard has been adopted and refined by other courts. *Little v. Walker,* 552 F.2d 193, 197 n. 8 (7th Cir.1977) (Deliberate indifference or "deliberate deprivation" constitutes two alternative "species of culpability: actual intent and recklessness."); *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981) ("Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical per-

sonnel capable of evaluating the need for treatment.").

■ Plaintiff's alleged medical needs were serious as required under the *Estelle* standard. "A medical need is 'serious' if it has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Duran v. Anaya,* 642 F.Supp. 510, 524 (N.M.1986), *citing, Laaman v. Helgemoe,* 437 F.Supp. 269, 311 (N.H.1977); *Ramos, supra,* 639 F.2d at 575. Plaintiff's medical needs were diagnosed by a physician as requiring treatment (medication, ointment and daily sitz baths). Thus, plaintiff's medical needs implicated his Eighth Amendment protection under *Estelle,* thereby imposing a duty on defendant Jenkins.

Whether or not defendant Jenkins' acts or omissions satisfied the *Estelle* "deliberate indifference" standard is a question of fact to be resolved during pre-trial discovery or the trial itself. *Joseph v. Brierton,* 739 F.2d 1244, 1246 (7th Cir.1984). Other courts have found that the duty to provide medical care to inmates, coupled with the complexity of factual issues involved, preclude granting a motion for summary judgment. *E.g., Archer v. Dutcher,* 733 F.2d 14, 17 (2nd Cir.1984) ("We have no doubt that the same standards of medical care cannot be imposed upon a prison as are presumed to be realized at a hospital.... But these are factual problems to be considered and weighed by the finder of fact where there is an underlying dispute as to whether legitimate medical claims were deliberately disregarded...."); *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 704 (11th Cir.1985) ("The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference.... When the allegations indicate this type of indifference, dismissal prior to discovery is premature."). Thus, if plaintiff's complaint regarding defendant Jenkins' acts or omissions alleges facts which if accepted as true might satisfy the *Estelle* standard, then defendant Jenkins' motion for summary judgment must be dismissed.

Plaintiff's response to defendant Jenkins' motion for summary judgment alleges that the following facts are in dispute: (1) whether defendant Jenkins knew or should have known of plaintiff's medical condition; (2) whether defendant Jenkins was responsible for assigning security personnel within the MCC, including those servicing the medical clinic; (3) whether defendant Jenkins failed to assign sufficient security personnel to the MCC medical clinic to enable plaintiff to receive access to prescribed medical treatment; (4) whether such a failure was a proximate cause of plaintiff's injuries; (5) whether defendant Jenkins was responsible for approving plaintiff's access to the medical clinic during evening hours; and (6) whether the failure of defendant Jenkins to approve access of plaintiff to the medical clinic was a proximate cause of plaintiff's injuries.

■ Regardless of the ultimate resolution of these factual disputes, it is clear that, for the purpose of a motion for summary judgment, if plaintiff's allegations are accepted as true, defendant Jenkins' conduct could violate his duty under *Estelle.* The fact that plaintiff did receive some medical care and treatment while in custody at the MCC does not immunize defendant Jenkins' conduct and certainly does not mandate granting summary judgment in defendant Jenkins' favor. *Murrell v. Bennett,* 615 F.2d 306, 310 n. 4 (5th Cir.1980). According to his complaint, plaintiff was suffering from repeated serious physical pain while in custody at the MCC, his condition was known to defendant Jenkins, and defendant Jenkins repeatedly denied him access to medical care. Thus, the complaint supports a finding that defendant Jenkins intentionally deprived plaintiff of known serious medical needs and treatment, causing him great injury cognizable under the Eighth Amendment. Accordingly, whether or not defendant Jenkins breached his duty owed to plaintiff is a matter of fact to be resolved at trial.

■ Defendant Jenkins alleges that plaintiff is responsible for his own injury. Whether defendant Jenkins or plaintiff proximately caused plaintiff's injuries is a matter of fact to be resolved during pre-trial discovery or the trial itself. The complaint sufficiently alleges facts which, if accepted as true, might establish that defendant Jenkins proximately caused plaintiff's injuries.

■ Defendant Jenkins finally alleges that, even if he owed a duty of care to plaintiff, he enjoys either absolute or qualified immunity from any liability. Prison officials previously enjoyed broad qualified immunity from 42 U.S.C. § 1983 damage suits. *Lock v. Jenkins*, 641 F.2d 488, 498 (7th Cir.1981). The Supreme Court, however, has defined qualified immunity as protecting an official who, in performing a discretionary function, acted in such a way as not to "violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (emphasis added). Thus, defendant Jenkins' assertion of qualified immunity must be determined based on "whether the law was clear in relation to the specific facts confronting the public official when he acted." *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir.1987). Whether or not the rights allegedly violated were clearly established at the time of a defendant's questionable conduct is a matter of law to be resolved by the court. *Joseph, supra*, 739 F.2d at 1249. Because the qualified immunity issue is considered pursuant to a motion for summary judgment, we "consider all of the undisputed evidence in the record, read in the light most favorable to [plaintiff]." *Green v. Carlson*, 826 F.2d 647, 650 (7th Cir.1987). The standard of conduct imposed on defendant Jenkins with respect to the care of inmates in custody at the MCC was clearly established by the Supreme Court in *Estelle* and has been adopted by the Court of Appeals for the Seventh Circuit. *Joseph, supra*, 739 F.2d at 1249–50; *Bass By Lewis v. Wallenstein*, 769 F.2d 1173, 1186 (7th Cir.1985). Defendant Jenkin's alleged acts and omissions occurred in 1985, well after the time at which the *Estelle* standard was promulgated and subsequently embraced by the Court of Appeals for the Seventh Circuit. In addition, as noted above, it is clear that defendant Jenkins' conduct, read in a light most favorable to plaintiff, violated clearly established norms. Thus, defendant Jenkins is not entitled to any immunity with respect to plaintiff's claim for damages and defendant Jenkins' motion for summary judgment is denied.

### B.

### *Wayman's Motion for Summary Judgment*

Defendant Wayman was the Lieutenant at the MCC when plaintiff was admitted in August, 1985. In addition to those allegations against defendant Jenkins recited above, plaintiff's third amended complaint, with respect to defendant Wayman, alleges the following: (1) defendant Wayman, or others acting under his supervision, intentionally denied plaintiff the sitz baths, causing plaintiff's condition to worsen; (2) on September 20, 1985, defendant Wayman, or other MCC personnel acting under his supervision, denied plaintiff access to his scheduled appointment with the second doctor seen previously; (3) on September 23 or 24, 1985, defendant Wayman, or others acting under his supervision, denied plaintiff access to a scheduled return visit to Mercy Hospital; (4) on September 23, 1985, a physician's assistant at the MCC clinic examined plaintiff and provided him with a portable sitz bath kit; (5) defendant Wayman, or others acting under his supervision, confiscated the portable sitz bath kit without plaintiff's consent and contrary to medical instructions; and, (6) as a result of defendant Wayman's acts and ommissions, plaintiff suffered great physical and mental injury.

In addition to those claims made by defendant Jenkins against plaintiff recited above, defendant Wayman's motion for summary judgment claims that: (1) he had no duty to assist plaintiff to gain access to medical personnel at the MCC; (2) he had

no duty to arrange for plaintiff's return visit to Mercy Hospital and additionally had no knowledge of the appointment itself; (3) he had no duty to allow plaintiff to maintain a portable sitz bath kit at the MCC; (4) he did not confiscate plaintiff's portable sitz bath kit but rather approved plaintiff's possession of it; and (5) he had no duty to assist plaintiff's medical needs due to the employment of medical personnel at the MCC who were independently responsible for plaintiff's care. Finally, defendant Wayman alleges that, if he was under a duty with respect to plaintiff's medical needs, he enjoys immunity from liability for any damage claims.

Defendant Wayman's duty with respect to plaintiff, while plaintiff was in custody at the MCC, is that duty proclaimed by the Supreme Court in *Estelle, supra*. Thus, defendant Wayman could be personally liable to plaintiff if defendant Wayman's acts or omissions constituted a "deliberate indifference" to plaintiff's "serious medical needs." *Id.* 429 U.S. at 104, 97 S.Ct. at 291; *Bivens, supra; Carlson, supra,* 446 U.S. at 18–23, 100 S.Ct. at 1471–1474. As already discussed with respect to defendant Jenkins' motion, plaintiff's medical needs were "serious." *Duran, supra,* 642 F.Supp. at 524. Accordingly, if plaintiff's complaint regarding defendant Wayman's acts or omissions alleges facts which if accepted as true might satisfy the *Estelle* standard, then defendant Wayman's motion for summary judgment must be denied.

Plaintiff's response to defendant Wayman's motion for summary judgment alleges that the following facts are in dispute: (1) whether defendant Wayman was responsible for approving plaintiff's access to the medical clinic during evening hours; (2) whether the failure of defendant Wayman to approve plaintiff's access to the MCC medical clinic was a proximate cause of plaintiff's injuries; (3) whether defendant Wayman confiscated plaintiff's portable sitz bath kit; and (4) whether defendant Wayman's confiscation of the sitz bath kit was a proximate cause of plaintiff's injuries.

Regardless of the ultimate resolution of these factual disputes, it is clear that, for the purpose of a motion for summary judgment, if plaintiff's allegations are accepted as true, defendant Wayman's conduct could violate his duty under *Estelle.* The fact that plaintiff did receive some medical care and treatment does not immunize defendant Wayman's conduct and certainly does not mandate granting summary judgment in defendant Wayman's favor. *Murrell, supra,* 615 F.2d at 310 n. 4. According to his complaint, plaintiff was suffering from repeated serious physical pain while in custody at the MCC, plaintiff's condition was known to defendant Wayman, and defendant Wayman both prevented plaintiff from receiving prescribed treatment and denied plaintiff access to medical care. Thus, the complaint supports a finding that defendant Wayman intentionally deprived plaintiff of known serious medical needs and treatment, causing him great injury cognizable under the Eighth Amendment. Accordingly, whether or not defendant Wayman breached his duty owed to plaintiff is a matter of fact to be resolved at trial.

Defendant Wayman alleges that plaintiff is responsible for his own injury. Whether defendant Wayman or plaintiff proximately caused plaintiff's injuries is a matter of fact to be resolved during pre-trial discovery or the trial itself. The complaint sufficiently alleges facts which, if accepted as true, might establish that defendant Jenkins proximately caused plaintiff's injuries.

Defendant Wayman finally alleges that, even if he owed a duty of care to plaintiff, he enjoys either absolute or qualified immunity. As discussed above with regard to defendant Jenkins' motion for summary judgment, plaintiff's constitutional rights were clearly established at the time of defendant Wayman's alleged acts and omissions. *Bass By Lewis, supra,* 769 F.2d at 1186; *Joseph, supra,* 739 F.2d at 1249–50. In addition, as noted above, it is clear that defendant Wayman's conduct, read in a light most favorable to plaintiff, violated clearly established norms. Thus, defendant Wayman is not entitled to any immunity with respect to plaintiff's claim for dam-

ages and defendant Wayman's motion for summary judgment is denied.

## V.

### United States' Motion for Summary Judgment

The MCC in Chicago is a federal institution under the control of the United States Bureau of Prisons. In addition to those allegations against defendants Jenkins and Wayman recited above, plaintiff's third amended complaint, with respect to defendant United States, alleges the following: (1) defendants Jenkins and Wayman were, at all times in question, employees of defendant United States; (2) defendant William Marinis was, at all times in question, an employee of defendant United States at the MCC medical clinic; (3) plaintiff was examined by defendant Marinis on September 15, 1985; (4) defendant Marinis is not a licensed physician and is not authorized to perform surgical operations; (5) under the pretense of giving plaintiff an injection, defendant Marinis intentionally, and contrary to plaintiff's express direction, cut plaintiff's hemorrhoid, causing plaintiff extreme pain and shock; (6) defendant Marinis' unauthorized surgery additionally caused a subsequent infection of the resulting open wound which caused plaintiff to hemorrhage and suffer further physical and mental injury; (7) defendants Knott, Harris, Stewart, Thompson, Grant, Jackson and Rulong were, at all times in question, employees of defendant United States at the MCC medical clinic; (8) plaintiff was denied prescribed daily sitz bath treatment because either the medical clinic was closed or the single physician's assistant on duty could not supervise plaintiff's treatment; (9) plaintiff's repeated requests for his prescribed medical supplies were ignored by defendants Knott, Harris, Stewart, Thompson, Marinis, Grant, Jackson and Rulong; (10) while at the MCC medical clinic during a scheduled appointment, plaintiff was verbally abused and threatened by defendant Grant and one or more of defendants Harris, Stewart, Thompson, Marinis, Jackson and Rulong; (11) following an order by a hospital administrator to examine plaintiff,

defendant Grant concluded that plaintiff's condition necessitated that he be sent to Mercy Hospital; (12) on or about September 25, 1985, plaintiff was summoned to the MCC clinic where he was verbally assaulted by defendants Harris, Grant and others for complaining about his difficulties in receiving medical treatment; (13) plaintiff was threatened with placement in isolation if he continued to complain; (14) during all times in question, defendants Harris, Grant, Stewart, Thompson, Marinis, Knott, Jackson and Rulong were employees of defendant Frank E. Basil, Inc., and acting within the scope of their employment; (15) on or about September 25, 1985, defendants Knott or Harris, or both of them, in the presence of defendant Grant and other unknown persons, accused plaintiff of having a venereal disease; (16) plaintiff has never had, and did not have during any time in question, any venereal disease; (17) the defamatory statement was made recklessly and with malice; (18) as a result of the defamatory statement, plaintiff's reputation has been harmed; (18) pursuant to 28 U.S.C. §§ 1346(b), 2671–80, plaintiff has filed an administrative Claim for Damage, Injury or Death with the United States Bureau of Prisons; (19) final disposition, denying the claim, was rendered on December 30, 1986; (20) during all times in question, defendant United States owed plaintiff a duty to provide reasonable and adequate medical care; (21) the MCC medical clinic, during all times in question, provided non-emergency care only during pre-selected "routine sick call" hours, Monday through Friday; (22) defendant United States knew, or reasonably should have known, when plaintiff was required to be available to testify in Federal Court at another trial and that such availability was required during weekday business hours in August and September, 1985; (23) defendant United States knew, or reasonably should have known, that plaintiff needed medical supplies, including gauze bandages, and other medical treatment, including prescribed sitz baths, at hours other than "routine sick call" hours at the MCC clinic; and (24) as a result of defendant United

States' negligence, plaintiff suffered great physical and mental injury.

In its motion for summary judgment, defendant United States claims that: (1) it is not liable for the alleged violations of plaintiff's constitutional rights committed by defendants Jenkins, Wayman, Marinis, Knott, Harris, Stewart, Thompson, Grant, Jackson and Rulong; (2) it is not liable for the alleged defamation of plaintiff committed by defendant(s) Knott or Harris; (3) it is not liable for the alleged negligence of defendants Knott, Harris, Stewart, Thompson, Marinis, Grant, Jackson and Rulong because they were independent contractors, solely liable for their negligence; (4) the alleged acts or omissions of defendants Jenkins and Wayman constitute either constitutional torts, for which it is not liable, or simple negligence for which defendants Jenkins and Wayman enjoy absolute immunity; and (5) the alleged acts or omissions of defendants Jenkins and Wayman are insufficient to support a finding of negligence.

■ Defendant United States' duty with respect to the medical care of inmates held in custody at the MCC has been clearly established. "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle, supra,* 429 U.S. at 103, 97 S.Ct. at 290. Defendant United States "is obliged to provide medical-care for those whom it is punishing by incarceration, and a denial of that care may result in the unnecessary infliction of pain and suffering—thus, enhanced punishment." *United States v. Bundy,* 587 F.Supp. 95, 97 (M.D.Tenn.1983), *citing, Estelle, supra,* 429 U.S. at 103, 97 S.Ct. at 290. Under the FTCA, defendant United States is liable "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. Thus, plaintiff can maintain an action against defendant United States based on the alleged negligence in satisfying plaintiff's medical needs.

■ The fact that plaintiff can recover against defendants Wayman, Jenkins, Marinis, Knott, Harris, Stewart, Thompson,

Grant, Jackson and Rulong individually, under *Bivens, supra,* and additionally sue defendant United States under the FTCA was established by the Supreme Court in *Carlson, supra,* 446 U.S. at 18–23, 100 S.Ct. at 1471–1474. These remedies are not mutually exclusive though damages, of course, may not be duplicated. *Id.* Thus, defendant United States' claim that the court lacks subject matter jurisdiction to hear plaintiff's complaint against defendant United States for the other defendants' alleged violations of plaintiff's constitutional rights is without merit.

■ Defendant United States is liable for the alleged negligence of defendants Marinis, Knott, Harris, Stewart, Thompson, Grant, Jackson, Rulong and Frank E. Basil, Inc. arising from their medical treatment of plaintiff because defendant United States has a non-delegable duty to provide reasonable medical care to inmates in its custody.

[A] jailer's duty to provide reasonable medical care is non-delegable. This duty attaches as soon as a prisoner is placed under the jailer's custody. A prisoner has no alternative in securing medical attention if a jailer fails in this regard.... For as long as the plaintiff was in their custody, for whatever reason, whether rightly or wrongly, the defendants owed a duty to provide appropriate medical care.

*McCormick v. City of Wildwood,* 439 F.Supp. 769, 776 (N.J.1977). Contracting with private health services agencies will not relieve the federal government from its constitutional obligation. The non-delegability of this duty applies to both state and federal governments:

The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals.... This duty is not absolved by contracting with an entity such as [defendant]. Although [defendant] has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the [defend-

ant]. In that sense, the county's duty is non-delegable.

*Ancata, supra,* 769 F.2d at 705 (footnote omitted). *See also, Wellman, supra,* 715 F.2d at 272, *citing Todaro v. Ward,* 565 F.2d 48, 54 (2nd Cir.1977) (Unlike discipline or security matters, deference to prison officials regarding medical care is less likely.); *Estelle, supra,* 429 U.S. at 104, 97 S.Ct. at 291, *quoting Spicer v. Williamson,* 191 N.C. 487, 490, 132 S.E. 291, 293 (1926) (" '[I]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.' "); *Bundy, supra,* 587 F.Supp. at 97 ("The [federal government] is obliged to provide medical-care for those whom it is punishing by incarceration.... [Plaintiff's] custodians had an obvious duty to see that the sentence imposed upon [her] did, and does, not become one of either excessive cruelty or death because of their failure to attend to her reasonable medical-needs when, because of her loss of liberty, she cannot attend to them herself." (footnote omitted)). Plaintiff's complaint sufficiently alleges that defendant United States, due to the alleged negligence of numerous other defendants, and the overall mishandling of plaintiff's serious medical needs, is liable under the FTCA in that it failed to provide reasonable medical care. The duty to provide reasonable care to inmates is non-delegable. The alleged actions of the defendant employees of defendant United States, if proved, would demonstrate that plaintiff was repeatedly denied reasonable medical care. The fact that medical care was supplied by other defendants, allegedly independent contractors, is irrelevant.

■ Even assuming, however, that defendant United States' duty to provide reasonable medical care to plaintiff was delegable, whether or not those named defendants to whom this duty was allegedly delegated fully assumed their responsibility, such that they were acting as independent contractors, is also a matter of fact to be determined during pre-trial discovery or a trial itself. *See, Quilico v. Kaplan,* 749 F.2d 480 (7th Cir.1984) (finding that plaintiff's medical malpractice claim based on alleged negligence of a Veterans Administration physician is cognizable under the FTCA). In addition, concluding that defendant United States could delegate its duty to provide reasonable medical care does not preclude a finding that defendant United States was negligent in delegating and monitoring its responsibility. Thus, summary judgment in favor of defendant United States, with respect to plaintiff's non-defamation claim, is denied.

■ Defendant United States' claim that plaintiff, by virtue of his incarceration, no longer maintains a reputation worthy of protection, is irrational. Under the FTCA, however, we lack subject matter jurisdiction to hear plaintiff's claim against defendant United States arising from other defendants' alleged defamation of plaintiff. 28 U.S.C. § 2680(h). Thus, defendant United States' motion for summary judgment with respect to this claim is granted. An appropriate order will enter.